**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

CYNTHIA RIDLEY                                    CIVIL ACTION NO. 20-1517

VERSUS                                                    JUDGE S. MAURICE HICKS, JR.

NORTHWEST LOUISIANA                      MAGISTRATE JUDGE HORNSBY
TECHNICAL COLLEGE, ET AL.

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss filed by Defendants Northwest Louisiana Technical College ("NWLTC"), Louisiana Community & Technical College System ("LCTCS"), the Louisiana Board of Regents, Stephen Long ("Long"), and Earl W. Meador ("Meador").[1] See Record Document 6. Plaintiff Cynthia Ridley ("Ridley") opposes dismissal.[2] See Record Document 8. The Defendants have filed a reply. See Record Document 12. For the reasons assigned herein, the Motion to Dismiss is hereby **GRANTED IN PART** and **DENIED IN PART**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The instant lawsuit sounds in employment discrimination. Ridley, an African American female with Type II diabetes, worked as an Administrative Assistant at NWLTC from October 2016 until her termination in August 2017. See Record Document 11 at ¶¶5-7. Ridley's immediate supervisor was Long, who in turn answered to Meador, NWLTC's Chancellor. See id. at ¶6. When Ridley began working at NWLTC, she advised Long of

---

[1] NWLTC, LCTCS, and the Louisiana Board of Regents will collectively be referred to as "Institutional Defendants," while Long and Meador may collectively be "Individual Defendants."
[2] Ridley sought and obtained leave from the Court to file an amended complaint alongside her opposition brief. See Record Document 9. Defendants replied shortly thereafter and argued both complaints could not survive dismissal, and as such, their arguments would remain unchanged. See Record Document 12.

her diabetic status and requested an accommodation to eat throughout the day in order to maintain her blood sugar levels. <u>See id.</u> at ¶8. In response, Long allegedly referred to Ridley as a "poorly sick" person and prohibited her from eating snacks at her desk or lunch in her parked car, the latter of which he described as a terminable offense. <u>Id.</u> at ¶¶8-9. According to Ridley, Meador was aware of these requests, but failed to approve them. <u>See id.</u> at ¶9.

Ridley states she was only permitted to eat lunch when with white employees and was accused of not wanting to be in the company of her white coworkers. <u>See id.</u> at ¶18. Additionally, she alleges Long repeatedly referred to her as "sister," despite her objections, and supervised her more closely. <u>See id.</u> Ridley also believes she was paid unequal wages and never made a permanent employee due to her race. <u>See id.</u> at ¶17.

Ridley's inability to eat while at work significantly hindered her job performance, causing nausea, weakness, and other side effects. <u>See id.</u> at ¶10. In August 2017, Ridley called out sick from work on two consecutive days. <u>See id.</u> at ¶11. She left messages for Long both days explaining her absence but did not receive responses. <u>See id.</u> at ¶11. On the third day, Ridley visited her physician who excused her from work for two weeks. <u>See id.</u> A note detailing this medical absence was faxed to NWLTC, but Long allegedly did not deliver it to human resources for several days and stated he did not receive the fax when asked via text message by Ridley. <u>See id.</u>

On August 27, 2017, Ridley was terminated reportedly because she was a probationary employee. <u>See id.</u> When Ridley filed for unemployment benefits, NWLTC responded that she was terminated for failing to report to work. <u>See id.</u> at ¶12. Despite a progressive disciplinary policy, Ridley argues she was never warned that her absence

was in violation of company policy until her firing. See id. Further, Ridley claims she had enough vacation and sick leave to cover the period of her absence. See id. at ¶11. Shortly after her termination, Ridley was replaced by a white female, whom Ridley alleges is less qualified than her and is a friend of Long's. See id. at ¶13. According to Ridley, Meador was aware Long hired his friend as her replacement. See id.

Ridley filed an EEOC Charge in October 2017 and received a right to sue letter in November 2020. See id. at ¶14. In the instant lawsuit, she alleges her rights have been violated through racial and disability discrimination in the workplace, as well as retaliation in employment. See id. at ¶1. She seeks damages pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., and 42 U.S.C. § 1981 through 42 U.S.C. § 1983. See id. at ¶1. Importantly, her § 1983 claims are made against only Long and Meador in their individual capacities. See id. at ¶4. Ridley also claims conspiracy amongst the Individual Defendants to deprive her of these rights. See ¶¶16-25.

## LAW AND ANALYSIS

Defendants argue dismissal is warranted under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See Record Document 6. Specifically, they argue (1) Eleventh Amendment sovereign immunity prohibits suit against the Institutional Defendants entirely and the two Individual Defendants in their official capacities; (2) Ridley has failed to state a qualifying disability for her discrimination allegations; and (3) Ridley's § 1983 claims against the Individual Defendants must be dismissed pursuant to qualified immunity and for failure to state a claim against Meador. See Record Document 6-1. Ridley counters the Eleventh Amendment is inapplicable to her claims for Title VII damages, diabetes is

a qualifying disability under the Americans with Disabilities Act ("ADA"), and she has pled sufficient allegations as to the Individual Defendants. See Record Document 8.

## I.     Sovereign Immunity

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle for dismissal on Eleventh Amendment grounds because sovereign immunity deprives a court of jurisdiction. See Warnock v. Pecos County, Texas, 88 F.3d 341, 343 (5th Cir. 1996). The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. The Eleventh Amendment recognizes (1) each State is a sovereign entity in our federal system, and (2) it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without consent. See Hans v. Louisiana, 134 U.S. 1, 13 (1890). As such, "[t]he Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." Perez v. Region 20 Educ. Service Center, 307 F.3d 318, 326 (5th Cir. 2002); see also Delahoussaye v. City of New Iberia, 937 F.2d 144, 146 (5th Cir. 1991).

Courts "have shaped the contours of Eleventh Amendment immunity to comport with the common-sense notion that a plaintiff cannot avoid the sovereign immunity bar by suing a state agency or an arm of a State rather than the State itself." Richardson v. Southern University, 118 F.3d 450, 452 (5th Cir. 1997). State colleges and their boards of regents have consistently been found to be arms of the state for Eleventh Amendment

purposes. See Pastorek v. Trail, 248 F.3d 1140 (5th Cir. 2001) (citing United Carolina Bank v. Board of Regents, 665 F.2d 553, 557 (5th Cir. 1982)). Additionally, because official capacity suits brought against individuals seek recovery of damages from the state itself, they also fall within Eleventh Amendment protection. See Olivier v. University of Texas System, 988 F.2d 1209 (5th Cir. 1993).

### A.  Institutional Defendants

While the Institutional Defendants fall within the ambit of the Eleventh Amendment as arms or agencies of the State of Louisiana, Congress has clearly abrogated sovereign immunity with respect to Title VII claims. See Ussery v. State of La. on Behalf of Louisiana Dept. of Health and Hospitals, 150 F.3d 431, 434-35 (5th Cir. 1998). In Ussery, the Fifth Circuit held that "Congress made its intent to abrogate the States' Eleventh Amendment immunity unmistakably clear when it amended Title VII's definition of 'person' to include governments, governmental agencies, and political subdivisions, and simultaneously amended the definition of employee to include individuals 'subject to the civil service laws of a State government, government agency, or political subdivision.'" Id. at 435; see also Nevada Dept. of Human Resources v. Hibbs, 538 U.S. 721, 729 (2003); Raj v. Louisiana State Univ., 714 F.3d 322, 329 n. 4 (5th Cir. 2013); Anderson v. La. Dept of Transportation & Dev., 2018 WL 3901182 at *2 (W.D. La. Aug. 15, 2018). With this clear abrogation established, Ridley's claims for Title VII damages against the Institutional Defendants cannot be dismissed on sovereign immunity grounds.[3]

---

[3] Defendants' reply memorandum cites Williams v. Louisiana, in which this Court found that NWLTC and LCTCS were not juridical entities and therefore lacked the procedural capacity to be sued. See 2017 WL 359218 at *3 (W.D. La. Jan. 24, 2017). While that case dealt with the same parties and ultimately led to the result Defendants seek here, dismissal was rooted in Federal Rule of Civil Procedure 17(b), not Eleventh

### B.  Individual Defendants

While it is true that official capacity claims against state actors qualify for sovereign immunity, personal or individual capacity suits against officials are not awarded such protection. See Hafer v. Melo, 502 U.S. 21, 31 (1991). Ridley has made clear in her pleadings to this Court that Long and Meador are being sued in their individual capacities only. See Record Document 1 at ¶3; Record Document 11 at ¶¶3-4. Accordingly, the Individual Defendants likewise cannot be dismissed from this lawsuit pursuant to Eleventh Amendment sovereign immunity.

### II.    Disability Discrimination

The ADA prohibits an employer from discriminating against a qualified individual on the basis of disability. See Delaval v. PTech Drilling Tubulars, LLC, 824 F.3d 476, 479 (5th Cir. 2016). "As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability." Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 758 (5th Cir. 1996). Courts must conduct a rigorous and individualized inquiry into claimed disabilities to fulfill the "statutory obligation to determine the existence of disabilities on a case-by-case basis." Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999).

In 2008, Congress amended the ADA to address what it perceived to be the Supreme Court's unduly restrictive approach to whether an individual suffered from a disability. See Clark v. Champion Nat'l. Sec., Inc., 952 F.3d 570, 578 n. 15 (5th Cir. 2020). A qualifying disability under the statute is defined as: (a) a physical or mental impairment that substantially limits one or more major life activities, (b) a record of such an

_____

Amendment sovereign immunity. To the extent this may be a new argument Defendants wish to make, it is well-settled that a party may not raise new arguments in reply briefing.

impairment, or (c) being regarded as having such impairment. See 42 U.S.C. § 12102(1). "Major life activities" under the statute include caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. See § 12102(2)(A). Under the revised ADA:

> [A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

§ 12101(2)(B). With the amended ADA also came a directive from Congress to construe the statutory definition of "disability" broadly in favor of coverage. See § 12102(4)(A).

EEOC regulations clarifying the statute's key definitions echo the broad coverage envisioned for the ADA. See 29 C.F.R. § 1630.2. "Physical or mental impairment" includes disorders or conditions:

> affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory, cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic lymphatic, skin, and endocrine…"

§ 1630.2(h)(1). "Major life activities" now also includes "the operation of an individual organ within a body system." § 1630.2(i).

From these statutory mandates and administrative guidance, it is clear that diabetes—as a disorder reflective of a defective pancreas and endocrine system—is capable of qualifying as a disability under the ADA. However, an individualized assessment must still take place to determine the extent Ridley's diabetes affects her everyday life. See Griffin v. United Parcel Serv., Inc., 661 F.3d 216, 223 (5th Cir. 2011) (citing Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 34 (1st Cir. 2010)) ("The analysis

of when and under what conditions diabetes is considered a disability for ADA purposes is a matter of degree"). Based on the factual allegations made in Ridley's First Amended Complaint, Ridley's diabetes could significantly hamper her daily activities when not controlled. See Record Document 11 at ¶10. For example, Ridley alleges that when her insulin levels drop, she can become ill and confused, her body will shake, and she may fall asleep. See id. This could hinder Ridley's ability to work and perform typical tasks. Thus, Ridley has sufficiently pled her diabetes as a qualifying disability under the ADA, and her disability discrimination claims must survive 12(b)(6) dismissal.

### III.      Qualified Immunity and Supervisor Liability

Qualified immunity protects government officials against individual liability for civil damages, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). A two-pronged analysis is used to evaluate whether a defendant is entitled to qualified immunity and asks whether the official's conduct violated an individual's rights and whether the rights at issue were clearly established at the time of the alleged misconduct. See McCreary v. Richardson, 738 F.3d 651, 654 (5th Cir. 2013).

Section 1983 does not create supervisory or respondeat superior liability. See Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002). "Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987). "Supervisory officials are accountable for their own acts of deliberate indifference and for implementing

unconstitutional policies that casually result in injury to the plaintiff." <u>Alderson v. Concordia Parish Correctional Facility</u>, 848 F.3d 415, 420 (5th Cir. 2017) (citing <u>Mouille v. City of Live Oak</u>, 977 F.2d 924, 929 (5th Cir. 1992)).

At this point, qualified immunity cannot serve as the grounds for dismissal of Ridley's claims against the Individual Defendants. Ridley's specific and plausible allegations of racial and disability discrimination in the workplace, coupled with the widespread awareness in the employment world of Title VII and ADA rights and protections, require that Ridley's claims must withstand a qualified immunity challenge at this early stage of the litigation.

However, Ridley's allegations against Meador fall short of stating a claim for which relief may be granted and must be dismissed. Ridley's pleadings make clear she is seeking to hold Meador liable for his own conduct, rather than for illegal policies he instituted. Her initial complaint made no specific mention of Meador or his actions, only listing him as a Defendant in his individual capacity who could be served at NWLTC where he serves as Chancellor. <u>See</u> Record Document 1 at ¶2. While Ridley's First Amended Complaint attaches Meador's name to specific claims, allegations against Meador are made only in connection to supervising Long's actions.[4] <u>See</u> Record Document 11. Her allegations of conspiracy amongst Long and Meador are entirely conclusory and do not point to any specific acts Meador took outside of his supervisory role to deprive Ridley of

---

[4] For example, Ridley alleges Meador and Long jointly fired her (¶6), Meador was aware of her requests for accommodation but failed to approve them (¶9), Meador had knowledge of Ridley's absence from work due to her illness (¶11), and Meador knew Long replaced Ridley with his friend (¶13). <u>See</u> Record Document 11.

her rights. See id. Because Ridley's allegations against Meador are rooted in the type of vicarious liability not recognized by Section 1983, these claims must be dismissed.

## CONCLUSION

With the exception of her allegations against Meador and those for conspiracy involving him, Ridley's claims must survive dismissal at this early stage of the litigation. As such, Defendants' Motion to Dismiss (Record Document 6) is hereby **GRANTED IN PART** and **DENIED IN PART**. An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 1st day of June, 2021.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT